## Commonwealth ex rel. Bionaz v. Burns

Before Griffith, P.J., and McDonald, J.

*Ferdinand F. Bionaz,* District Attorney, and *Robert J. Cassidy,* First Assistant District Attorney, for plaintiff.

*Vincent M. Casey* and *Blair V. Pawlowski,* for defendant.

GRIFFITH, P.J., October 6, 1962.—This is an action of quo warranto brought in the name of the Commonwealth on the relation of the district attorney seeking to oust defendant from his office of county commissioner of Cambria County. After complaint, answer, new matter and reply to new matter, plaintiff moved for judgment on the pleadings in accordance with Pa. R.C.P. 1034.

There is no dispute but that the pleadings show: That defendant was elected to a four year term as county commissioner of Cambria County commencing on the first Monday of January, 1960 (Act of August 9, 1955, P. L. 323, sec. 401, 16 PS §401) ; that on September 24, 1960, he was convicted by a jury on the charge of extortion by color of office while serving as superintendent of the Cambria County Home for the Aged, such proceedings being filed to no. 102 June sessions, 1960, in the court of quarter sessions; that, on February 23, 1961, his motion for new trial and in arrest of judgment were denied and that, on March 1, 1961, he was sentenced to serve a term of one year in the county prison; that on September 12, 1961, the Superior Court of Pennsylvania upheld defendant's conviction on this charge and on March 23, 1962, the same court refused his petition for reargument; that, on July 18, 1962, the Supreme Court of Pennsylvania denied defendant's petition for allocatur.

That on July 5, 1961, defendant was convicted on 13 counts of embezzlement by public officer entered to nos.

57, 58, 59, 61, 64, 65, 67, 68, 69, 70, 71, 72 and 73 September sessions, 1960, in the court of quarter sessions. That, on October 30, 1961, defendant was sentenced to undergo imprisonment in the county prison for a period of not less than three nor more than ten years, such sentence to commence at the expiration of the sentence previously imposed on the charge of extortion by color of office. The sentences of imprisonment imposed on the embezzlement convictions were directed to run concurrently and not consecutively but defendant was ordered to make restitution to Cambria County in each of the embezzlement cases. On June 12, 1962, the Superior Court of Pennsylvania affirmed the judgment of the court of quarter sessions on the 13 embezzlement indictments and on July 5, 1962, the same court denied his petition for reargument. On July 18, 1962, the Supreme Court of Pennsylvania denied defendant's petition for allocatur on the embezzlement charges. Defendant is presently serving these sentences in the Cambria County Prison. That article II, sec. 7, of the Constitution of Pennsylvania provides as follows:

"No person hereinafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth."

That the office of county commissioner is an office of trust and profit.

The complaint further avers that extortion by color of office is an infamous crime. This averment is denied by defendant. The complaint avers that defendant has been convicted of embezzlement of public money. This averment is admitted except that defendant denies his conviction was for the embezzlement of "public" money. The complaint also avers that defendant is incapable of holding the office of county commissioner. This is denied by defendant.

Defendant, under new matter, alleges that the final disposition of the charges against him has not as yet been determined and that until such final determination he cannot be ousted from the office of county commissioner. Plaintiff's reply to new matter denies that the charges against defendant have not as yet been finally determined.

The Act of June 14, 1836, P. L. 621, sec. 2, 12 PS §2022, provides that:

"Writs of quo warranto . . . may . . . be issued by the several courts of common pleas . . .

"I. In case any person shall . . . unlawfully hold or exercise any county or township office . . ."

Quo warranto is the proper remedy to determine title to public office: Commonwealth ex rel. Shoemaker v. Thomas, 328 Pa. 19; Spencer v. Snedeker, 361 Pa. 234, 238.

Section 11 of the Quo Warranto Act of 1836, 12 PS §2031, provides:

"If the defendant in any quo warranto . . . be found or adjudged guilty of . . . unlawfully holding . . . the office . . . mentioned in such writ, the court shall give judgment that such defendant be ousted, and altogether excluded from such office . . ."

Plaintiff contends that defendant is "unlawfully holding" the office of county commissioner in view of the provisions of article II, sec. 7, of the Constitution of Pennsylvania declaring that no one convicted of embezzlement of public moneys or other infamous crime shall be eligible to hold any office of trust or profit in the Commonwealth.

We need not determine whether extortion by color of office is an infamous crime because we are satisfied that defendant has been convicted of embezzlement of public moneys within the meaning of article II. sec. 7, of the Constitution. In his answer to the complaint, defendant denied that the embezzlements of which he was convic-

ted were of public moneys. At the oral argument, however, this contention was not pressed. Clearly the moneys embezzled by defendant as set forth in the 13 indictments were public. Defendant was convicted of a violation of the Act of June 24, 1939, P. L. 872, sec. 822, 18 PS §4822, which relates solely to public moneys. During the embezzlement trials, admitted by the pleadings, the jury was charged that it could convict only if it was satisfied that defendant converted public moneys to his own use. In its opinion refusing defendant's motion in arrest of judgment, the lower court stated that defendant ". . . was properly indicted for embezzlement of public funds." In affirming the action of the lower court, the Superior Court, 198 Pa. Superior Ct. 208, 212 (allocatur to Supreme Court of Pennsylvania refused), said: "When collected from the patients the money became public money."

Defendant seriously contends that he has not as yet been "convicted" within the meaning of article II, sec. 7, of the Constitution since the time for asking the Supreme Court of the United States to allow a certiorari or appeal will not expire until October 18, 1962. It is true that the word "convicted" can mean only a final judgment of sentence and not merely a verdict of guilty rendered by a jury: Commonwealth ex rel. McClenachan v. Reading, 336 Pa. 165, 169; Shields v. Westmoreland County, 253 Pa. 271, 273; Commonwealth ex rel. Arnold v. Ashe, 156 Pa. Superior Ct. 451.

There is some dispute among the authorities as to whether a defendant in a criminal case has been "convicted" when an appeal to a State appellate court is still pending and undisposed of: 71 A.L.R. 2d 593. A majority of the cases have held that, after sentence, notwithstanding an appeal, there was a conviction within the meaning of the provisions that a public office shall become vacant upon the incumbent's conviction of certain crimes and that an immediate vacancy resulted

despite the appeal. The rationale of these decisions being that the removal from office resulting from conviction was not a punishment but was a consequence imposed in the interest of the public and of sound government and that it would be against public interest to retain in office, pending an appeal, one who, having been found guilty and sentenced, was presumed to be guilty so far as the vacancy in office was concerned even though he might ultimately establish his innocence: 71 A.L.R. 2d 600. Certainly an incarcerated prisoner cannot administer a public office and, when he has been convicted of a crime which disqualifies him from office, the public interest demands that the possibility that he may ultimately be declared innocent should not result in retaining him in office pending an appeal: McKannay v. Horton, 151 Cal. 711, 91 Pac. 598.

In Shields v. Westmoreland County, 253 Pa. 271, 274, plaintiff, a county commissioner, had been legally sentenced for embezzlements which had occurred during his prior term as sheriff. The court said that upon being properly sentenced he became incapable of holding his office as county commissioner under article II, sec. 7, of the Constitution, and was "civiliter mortuus as to any office of trust or profit in the Commonwealth, and is no more entitled to what he claims than his estate would be entitled to it if he had physically died May 11, 1912 [the date of his re-sentence]. On that day the Constitution became self operating upon him, and took from him the capacity to hold any further title to the office to which he had been elected. Quo warranto proceedings might have been instituted against him, but were not needed to prevent his recovering salary . . ."

Here, defendant has been found guilty of embezzlement of public moneys and a judgment of sentence has been rendered upon him and his appeals to the Superior and Supreme Courts of Pennsylvania have been denied.

His counsel stated at the oral argument that he intended to ask the Supreme Court of the United States to allow an appeal or a certiorari but so far as we have been advised this action has not been taken. Whether defendant will take such step and whether the Supreme Court of the United States will accept jurisdiction is highly doubtful. The Judicial Code, 28 U.S.C.A. §1257 (1948 revision), allows an appeal to the Supreme Court of the United States from the State courts only "where is drawn in question the validity of a treaty or statute of the United States and the decision is against its validity; or where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of its validity."

In the present case, it is difficult to imagine how the validity of the Pennsylvania statute making embezzlement by a public officer a crime could be repugnant to the Constitution or the laws of the United States. Such question was not raised in this court or in the appellate courts of Pennsylvania.

"It does not appear, however, from the record that this constitutional question was presented or passed upon by the Supreme Court of the State; and as it was sought to raise this question for the first time by assignments of error in this Court, it is necessarily excluded from consideration": Water River Lumber Company v. Arkansas ex rel. Applegate, Attorney General, 279 U.S. 692. Moreover, the Supreme Court of the United States will not assume jurisdiction where the highest court of the State has denied a motion for leave to appeal to it from a lower court without stating any grounds for its decision unless the Supreme Court of the United States first ascertains whether the State court's decision might have rested on a non-federal ground: Stembridge v. Georgia, 343 U.S. 541; Ellis v. Dixon, 349 U.S. 458. Here, there can be no doubt that

the decision of the State court was on a purely non federal ground.

We are satisfied that defendant has been finally adjudicated guilty of 13 offenses of embezzlement of public moneys and that as a result he is incapable of holding the office of County Commissioner of Cambria County.

Judgment to ouster must therefore be entered.

### Decree

And now, October 6, 1962, after argument and upon due consideration, plaintiff's motion for judgment on the pleadings is sustained and defendant is found and adjudged to be guilty of unlawfully holding the office of County Commissioner of Cambria County. It is, therefore, the judgment of the court that defendant be ousted and altogether excluded from the office of County Commissioner of Cambria County and that the costs of this proceeding be placed upon defendant.